UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 11-CR-20490-02
        Honorable Thomas L. Ludington

THERESA GILBERT,

        Defendant.
_____ /

**OPINION AND ORDER DENYING DEFENDANT
THERESA GILBERT'S MOTION TO DISMISS THE INDICTMENT**

This criminal case arises out of a couple's alleged sale of cattle that the government had obtained a security interest in, without the government's consent and without reimbursing the government. The instant motion presents three principal issues. First, did the magistrate judge have the jurisdictional authority to dismiss a misdemeanor charge, as the parties had consented to proceed before the magistrate judge? Second, assuming the magistrate did have jurisdiction, does that dismissal preclude the government's subsequent felony indictment charging separate criminal offenses arising out of the same alleged wrongdoing? And third, did the government act vindictively by responding to the dismissal of the single misdemeanor by charging seventeen felonies?

For the following reasons, the Court concludes that the magistrate judge did have the authority to dismiss the misdemeanor charge, but that dismissal does not preclude this subsequent felony indictment, and that the prosecutor did not act vindictively. Accordingly, Defendant Theresa Gilberts' motion to dismiss the indictment will be denied.

## I.

In 2005, the U.S. Department of Agriculture loaned Defendants Chad and Theresa Gilbert about $39,000. As collateral for the loan, Defendants granted the United States Department of Agriculture a security interest in their livestock, including cattle. Defendants later sold some of the cattle subject to the security interest to third parties without the government's consent, the government alleges, and did not use the sale proceeds to pay their indebtedness.

In August 2008, the government filed an information charging Defendants with a single misdemeanor violation of 18 U.S.C. § 641. *See* Information, *United States v. Gilbert*, No. 10-cr-20505 (E.D. Mich. filed Aug. 18, 2008), ECF No. 1. In pertinent part, it alleged that Defendants had "embezzled and converted . . . things of value of the United States" when they "sold the collateral . . . and used the proceeds of the sale for purposes other than to pay their indebtedness." *Id.* at 1. Both Defendants consented to proceed before Magistrate Judge Binder. In September 2010, a Rule 11 plea agreement was submitted to Judge Binder. On February 14, 2011, Judge Binder vacated the guilty pleas. *United States v. Gilbert*, No. 10-cr-20505, 2011 WL 652830, at *4–5 (E.D. Mich. Feb. 14, 2011). Finding the pleas did not have the necessary the factual basis for entry because the government's security interest did not equate to an ownership interest, the order explained that "the conduct to which both Defendants admitted during their plea hearings does not constitute a violation of 18 U.S.C. § 641 because the property sold was owned by Defendants, and not by the government, as required under the first element of section 641." *Id.* at 5.

Three days after the guilty pleas were vacated, the government sent a letter to Defendants, providing three options on how Defendants might choose to proceed: "(1) withdraw your consent to magistrate jurisdiction, and ask Judge Ludington to re-instate the guilty pleas and

enforce the plea agreements, (2) seek reconsideration of the magistrate judge's order because you wish to have the benefit of the pre-indictment misdemeanor plea agreement, or (3) await a grand jury indictment. As it is said, the ball is now in your court." Def.'s Mot. to Dismiss Ex. 1 ("Def.'s Mot.").

Several months passed. Defendants did not act in response to the government's suggestion. The government did not act either. On July 28, 2011, Judge Binder recognized that no action had been taken in the case for more than seventy days and entered an order dismissing the case with prejudice. *See United States v. Gilbert*, 10-20505, slip op. 4–5 (E.D. Mich. July 28, 2011). The order explained: "The Order Vacating Pleas was entered on February 14, 2011. Accordingly, Defendants should have been brought to trial within seventy days of that date, or April 25, 2011. Therefore, the failure to bring Defendants to trial by that date has violated the Speedy Trial Act and the cases must be dismissed." *Id*. at 4 (internal citation omitted).

Less than a week after the cases were dismissed, the government filed a seventeen-count felony indictment against Defendants, alleging violations of 15 U.S.C. § 714m(c) & (d) and 18 U.S.C. § 1001. *See* Indictment, *United States v. Gilbert*, 11-cr-20490 (E.D. Mich. filed Aug. 3, 2011), ECF No. 1. Although charging different offenses, the indictment is based on the same alleged wrongdoing — that Defendants "embezzled and converted . . . things of value of the United States" when they "sold the collateral . . . and used the proceeds of the sale for purposes other than to pay their indebtedness." *Id*. at 1.

Defendant Chad Gilbert then moved to dismiss the indictment on two grounds, law of the case and prosecutorial vindictiveness. ECF No. 12. By opinion and order of October 25, 2011, the Court denied the motion. ECF No. 18. Defendant Theresa Gilbert now moves to dismiss the

indictment on the same two grounds. ECF No. 17. For the following reasons, her motion will be denied.

## II.

The jurisdiction of federal magistrate judges is established, and circumscribed, by 18 U.S.C. § 636. Subsection (b) limits the authority of magistrate judges to issue dispositive orders (absent party consent), providing in pertinent part:

> Notwithstanding any provision of law to the contrary—
> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. . . .

28 U.S.C. § 636(b)(1)(A). Subsection (c), however, provides that if the parties consent, the magistrate judge may exercise plenary jurisdiction over the case. *See* § 636(c)(1); *see generally Black's Law Dictionary* 870 (8th ed. 2004) (defining "plenary jurisdiction" as "[a] court's full and absolute power over the subject matter and the parties in a case"). It provides in pertinent part:

> Notwithstanding any provision of law to the contrary—
> (1) Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . .

§ 636(c)(1).[1] The Sixth Circuit explains that "in cases where parties consent to a magistrate judge's exercise of plenary jurisdiction . . . the magistrate judge issue effective rulings on all

---

[1] Additionally, as part of the Federal Courts Improvement Acts of 1996 and 2000, 18 U.S.C. § 3401 and 28 U.S.C. § 636(a) were amended to expand the authority of magistrate judges over misdemeanor cases. Magistrate

matters, including dispositive motions." *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 515 (6th Cir. 2001) (citing 28 U.S.C. § 636(b)(1)(B)); *see also Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169 (6th Cir. 1993) ("If the parties consent to a reference under § 636(c)(1) and the district court so designates, a magistrate judge may exercise plenary jurisdiction.").

In this case, the parties consented to Judge Binder's exercise of plenary jurisdiction, executing a form document entitled "Consent to Proceed Before a Magistrate Judge in a Misdemeanor Case." *See* Consent to Proceed before Magistrate Judge, *United States v. Gilbert*, No. 10-cr-20505 (E.D. Mich. filed Sept. 2, 2010), ECF No. 2. In pertinent part, it states: "I consent to being tried before a United States magistrate judge, and I waive my rights to trial, judgment, and sentencing by a United States district judge." *Id.*[2] Accordingly, the government's reliance on subsection (b) of § 636 is misplaced — Judge Binder's jurisdiction over the case arose from subsection (c).

Plenary jurisdiction includes the authority to dismiss charges sua sponte. *See United States v, Mancias*, 350 F.3d 800, 810 (8th Cir. 2003) (noting that "the Speedy Trial Act requires an automatic dismissal of the charges for failing to bring a defendant to trial within its seventy-day limit"); *United States v. Lowery*, 21 F. Supp. 2d 648, 649 (E.D. Tex. 1998) (mem.) ("Due to an unintentional mix-up, the 'Speedy Trial Act,' 18 U.S.C. § 3161, has been violated . . . . Sua sponte, the court is required to dismiss the indictment.").

---

judges may now try and dispose of all infractions, Class C misdemeanor cases, and Class B misdemeanor cases without the defendant's consent. *See* 18 U.S.C. § 3401(b).

[2] As an aside it should be noted that while Defendant endorsed this provision, the government endorsed only the waiver of jury trial section immediately following this provision. The government now contends that "the consent form signed by the defendant only reflected the defendant's agreement to be tried and sentenced by the magistrate judge. Nothing in that consent form purported to establish a non-existent jurisdictional basis on which the magistrate judge could issue dispositive orders." Pl.'s Opp'n Mot. Dismiss 4. The government's contention is unpersuasive — the defendant unambiguously consented to the magistrate's exercise of plenary jurisdiction. And, when the document is read in full, it is evident that the government did as well.

Thus, the government may be correct that "[i]t would be irrational to assert that a magistrate judge that lacked the jurisdiction to grant a motion to dismiss could nevertheless sua sponte order the dismissal of an action." Pl.'s Opp'n Mot. Dismiss 3, ECF No. 20. As the government's premise is unfounded in this case, however, its conclusion is unpersuasive. Judge Binder had jurisdiction to dismiss the information sua sponte.

### III.

"Generally, the law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Gibbs*, 626 F.3d 344, 351 (6th Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997)). That is, "[a] party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter." *Adesida*, 129 F.3d at 850.

In the prior case, two orders were entered but not appealed. Neither, however, bars the present case. First, an order was entered providing that the offense charged in the August 2008 information, a single misdemeanor violation of 18 U.S.C. § 641, "does not apply in a factual setting such as this case." *United States v. Gilbert*, No. 10-cr-20505, 2011 WL 652830, at *3 (E.D. Mich. Feb. 14, 2011). "[T]he conduct to which both Defendants admitted during their plea hearings," the order elaborated, "does not constitute a violation of 18 U.S.C. § 641 because the property sold was owned by Defendants, and not by the government, as required under the first element of section 641." *Id*. at 5. Of course, simply because the stipulated facts of the prior misdemeanor plea agreement did not satisfy one element of § 641 — the government's

ownership interest in the property at issue — does not necessitate the conclusion that the government is unable to establish the elements of a different statute, such as 15 U.S.C. § 714m.[3]

Second, an order was entered declaring that the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, had been violated because the trial in the prior case had not commenced within seventy days after the order vacating the pleas was entered. Because the trial had not commenced within this time, the order continued, the case against Defendants was "dismissed with prejudice to their ever being tried again based on the facts stated in the Information filed herein." *United States v. Gilbert*, 10-20505, slip op. 5 (E.D. Mich. July 28, 2011).

Defendant interprets 18 § U.S.C. 3161 to mean that the government is precluded from bringing separate charges based on the conduct which formed the basis of the previous information. She writes:

> [A] reading of Section 3161 makes clear that once any complaint against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such or individual charging him with the same offense, or on events based on the same conduct, or arising from the same criminal episode, or an information or indictment that's filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, that the provisions of Section 3161(d)(1) do apply to such subsequent complaint, indictment or information.

Def.'s Mot. 6–7. Although Defendant is incorrect as a matter of law, her misinterpretation is understandable. Discussing § 3161, the Seventh Circuit has observed: "it is difficult to imagine a more obliquely written provision." *United States v. Samples*, 713 F.2d 298, 302 (7th Cir. 1983).

---

[3] Indeed, under § 714m the government may not need to establish an ownership interest in the embezzled or converted property — establishing that the property at issue was "mortgaged or pledged" to the Commodity Credit Corporation may be sufficient. See 15 U.S.C. § 714m(c) ("Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the [Commodity Credit] Corporation, or any property mortgaged or pledged as security for any promissory note, or other evidence of indebtedness, which the Corporation has guaranteed or is obligated to purchase upon tender, shall, upon conviction thereof . . . be punished . . . .").

"The Speedy Trial Act went through numerous drafts." *United States v. Worthy*, 755 F. Supp. 2d 226, 231 (D. Me. 2010) (discussing legislative history). In early drafts, Congress considered — and eventually rejected — a broad transactional test which would preclude re-indictment on the same facts rather than the same charges. "The Act was amended and narrowed on the House floor to express only its present very limited application." *Id.* (citing 120 Cong. Rec. 41793–95 (Dec. 20, 1974); A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* 194–95 (Fed. Judicial Ctr.1980)). That is,

> Congress considered and declined to follow the suggestion that the Speedy Trial Act's dismissal sanctions should be applied to a subsequent charge if it arose from the same criminal transaction or event as those detailed in the initial complaint or were known or reasonably should have been known at the time of filing the initial complaint.

*United States v. Derose*, 74 F.3d 1177, 1184 (11th Cir. 1996) (citing *United States v. Napolitano*, 761 F.2d 135, 137–38 (2d Cir. 1985)); *see also United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990). Instead, when a prior indictment or information is dismissed, "the government is not barred from using the underlying facts in that offense as the basis for a charge that he committed a different offense." *United States v. Stricklin*, 591 F.2d 1112, 1120 (5th Cir. 1979). Thus, in considering the preclusive effect of a prior dismissal with prejudice, "it is the charge that matters, not the facts underlying the charge." *Worthy*, 755 F. Supp. 2d at 231 (emphasis omitted) (citing *United States v. Grullon*, 545 F.3d 93, 97 (1st Cir. 2008)). As amended, § 3161 provides in pertinent part:

> If any indictment or information is dismissed upon motion of the defendant . . . and thereafter . . . [an] indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the [Speedy Trial Clock] provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent . . . indictment . . . .

18 U.S.C. § 3161(d)(1). Although perhaps not obvious from a first reading of the text, the effect of the statute is to bifurcate the effect of dismissal depending on which party moves for dismissal. *United States v. Duque*, 62 F.3d 1146, 1150 (9th Cir. 1995) ("[T]he identity of the author of the motion for dismissal is paramount in determining whether the clock should be restarted or merely tolled."). The Supreme Court elaborates:

> When an indictment is dismissed on motion of the defendant, and the defendant is thereafter reindicted, both the 30-day and 70-day periods run anew. In contrast, however, when an indictment is dismissed on motion of the Government, and the defendant is thereafter reindicted, both the 30-day and 70-day periods continue to run from the first indictment, with the proviso that the period during which no indictment is outstanding is excluded from the 70-day calculation.

*United States v. Rojas-Contreras*, 474 U.S. 231, 239 (1985) (citing 18 U.S.C. § 3161(d)(1)).

This bifurcation, of course, does not address the third manner that an indictment or information may be dismissed — sua sponte by the court, as in this case. And, although the Sixth Circuit has not yet addressed the issue, other courts have. *See, e.g.*, *United States v. Perez*, 845 F.2d 100, 104 (5th Cir. 1988); *accord United States v. Feldman*, 788 F.2d 544, 549 (9th Cir. 1986). The Fifth Circuit, for example, has concluded: "the consequence of the sua sponte dismissal favored the defendants. . . . As beneficiaries of the court's dismissal, the motion to dismiss must be treated as their own." *Perez*, 845 F.2d at 104 (citing *United States v. Mize*, 820 F.2d 118, 121 (5th Cir. 1987)). "When the district court vacated their convictions," the Fifth Circuit wrote, "essentially permitting them to withdraw their pleas, the time limits began anew. Because the pleas based on the first indictment were dismissed, the retrial clock did not start until a new complaint was filed." *Id.* "This result does not frustrate the purposes animating the Speedy Trial Act," the First Circuit explains:

> In enacting the Speedy Trial Act, Congress acknowledged that a person subject to prolonged pretrial delays faces a number of debilitating factors, including the

> disruption of family life, loss of employment, anxiety, suspicion, and public obloquy. After dismissal of formal charges, however, any such strain is no greater than it is upon anyone openly subject to a criminal investigation.

*United States v. Meade*, 110 F.3d 190, 201 (1st Cir. 1997) (internal citations and quotation marks omitted) (quoting *United States v. MacDonald*, 456 U.S. 1, 9 (1982)).

In this case, as in *Perez*, because the pleas based on the first information were dismissed sua sponte by the court, the speedy trial clock did not start anew until the new indictment was filed. Accordingly, the indictments are not barred by § 3161(d)(1).

A separate, somewhat closer issue arises as to whether the text of the July 28, 2011, order itself precludes the subsequent indictment because it provides that the case against Defendants is "dismissed with prejudice to their ever being tried again based on the facts stated in the Information filed herein." *United States v. Gilbert*, 10-20505, slip op. 5 (E.D. Mich. July 28, 2011). Defendant, however, does not make this argument — she rests her motion on the text of § 3161(d)(1). Moreover, which "facts" — historical or legal — the order is referencing is, perhaps, unclear. An expansive interpretation of the order, encompassing both historical and legally operative facts, would rest on uncertain statutory authority. And it would raise irreconcilable conflicts with the case law discussed above. Thus, the Court interprets the order narrowly, concluding that it merely precludes the government from recharging Defendants with the same legally operative facts necessary to sustain a violation of 18 U.S.C. § 641. As the present indictment regards distinct legal facts — specifically, the government's security interest in the livestock — it is not precluded by the prior order.

### IV.

"For an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his protected statutory or constitutional rights is patently unconstitutional."

*Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (quoting *United States v. Goodwin*, 457 U.S. 368, 372 n.4 (1982)). "Thus, a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited." *Id.* (citing *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989)); *see generally* Melodie Bales, Note, *Opening the Umbrella: The Expansion of the Prosecutorial Vindictiveness Doctrine in United States v. Jenkins*, 59 Cath. U.L. Rev. 855 (2010) (discussing historical development of prosecutorial vindictiveness doctrine and current practices in federal court).

Prosecutorial vindictiveness may be established in two ways. First, a defendant may demonstrate "actual vindictiveness, by producing objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003) (internal quotation marks omitted) (quoting *Bragan*, 249 F.3d at 481). Demonstrating actual vindictiveness "has been characterized as exceedingly difficult and an onerous burden." *Id.* (internal quotation marks omitted) (quoting *Poindexter*, 249 F.3d at 481, 483). Alternatively, a defendant may demonstrate "a realistic likelihood of vindictiveness" by establishing four elements: [1] exercise of a protected right; [2] the prosecutor's 'stake' in the exercise of that right; [3] the unreasonableness of the prosecutor's conduct; and, presumably, [4] that the prosecution was initiated with the intent to punish the plaintiff for the exercise of the protected right." *Dupree*, 323 F.3d at 489 (citing *Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 723 (6th Cir. 1999)). Crucially, "a person claiming to be vindictively prosecuted, must show that the prosecutor had some 'stake' in deterring the petitioner's exercise of his rights." *Id.*

Here, Defendant proceeds under the latter theory — "a realistic likelihood of vindictiveness." *See* Def.'s Mot. 9–10. Her sole allegation regarding the prosecutor's stake,

however, is that "the prosecutor showed their [sic] stake in preventing the exercise of the protected right by threatening the felony indictment." *Id*. at 10. Her argument is unpersuasive.

"The Supreme Court has recognized that "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Dupree*, 323 F.3d at 489 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). In *Bordenkircher*, for example, the Court concluded that the prosecutor's response to the defendant's decision not to plead guilty, re-indicting the defendant on more serious charges, did not constitute prosecutorial vindictiveness. 434 U.S. at 358–61.

The government's conduct in this case — made in the context of plea bargaining with Defendant after the prior plea agreement was vacated — likewise does not rise to the level of prosecutorial vindictiveness. Moreover, the Department of Justice's *United States Attorney's Manual* instructs:

> Except as provided in [the *United States Attorney's Manual* §] 9-27.330, (precharge plea agreements), once the decision to prosecute has been made, the attorney for the government should charge, or should recommend that the grand jury charge, the most serious offense that is consistent with the nature of the defendant's conduct, and that is likely to result in a sustainable conviction. . . . The "most serious" offense is generally that which yields the highest range under the sentencing guidelines.
>
> However, a faithful and honest application of the Sentencing Guidelines is not incompatible with selecting charges or entering into plea agreements on the basis of an individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purposes of the Federal criminal code, and maximize the impact of Federal resources on crime. Thus, for example, in determining "the most serious offense that is consistent with the nature of the defendant's conduct that is likely to result in a sustainable conviction," it is appropriate that the attorney for the government consider, inter alia, such factors as the Sentencing Guideline range yielded by the charge, whether the penalty yielded by such sentencing range (or potential mandatory minimum charge, if applicable) is proportional to the seriousness of the defendant's conduct, and whether the charge achieves such purposes of the

> criminal law as punishment, protection of the public, specific and general deterrence, and rehabilitation.

Dep't of Justice, *United States Attorney's Manual* § 9-27.300(A) (2002), *available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm. Thus, absent a precharge plea agreement, a federal prosecutor is instructed to charge "the most serious offense that is consistent with the nature of the defendant's conduct." *Id*.

In this case, after the plea agreement was vacated, Defendant did not act on the government's suggested alternatives of either withdrawing consent to the magistrate judge's jurisdiction or seeking reconsideration of the order vacating the pleas. Consequently, the government was not acting vindictively by pursing the third alternative presented to Defendants: charging a more serious offense. Indeed, the prosecutor was simply following the express policy of the Department of Justice.

**V.**

Accordingly, it is **ORDERED** that Defendant's motion to dismiss the indictment (ECF No. 17) is **DENIED**.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: November 22, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 22, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS